Not for Publication w

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KATHLEEN IRWIN,

        Plaintiff,

v.

AGUSTAWESTLAND PHILADELPHIA CORP, TERRY EICHMAN, and SUSAN MCNEICE,

        Defendants.

Civil Action No. 20-2475 (ES) (CLW)

OPINION

**SALAS, DISTRICT JUDGE**

    Before the Court is defendants AgustaWestland Philadelphia Corporation ("AWPC"), Terry Eichman, and Susan McNeice's (collectively, "Defendants") motion to compel arbitration and to stay the case. ("Motion to Compel"). (D.E. No. 20). The Court has considered the parties' submissions and decides the Motion to Compel without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Motion to Compel is DENIED.

**I.    BACKGROUND**

    Plaintiff Kathleen Irwin was employed by AWPC as a "Transportation Security Administration Coordinator Worldwide" from 2011 to September 30, 2019, the date of her termination. (D.E. No. 1-1 ("Complaint" or "Compl.") ¶ 6). Prior to her termination, on February 11, 2019, Herbert Benton, who is not a party in this case, arrived at AWPC and was denied access to use a full flight simulator because he was unable to prove that he was a United States citizen. (*Id.* ¶ 8). The next day, Plaintiff contacted Benton to obtain his citizenship documentation, as required by Federal Aviation Administration regulations. (*Id.* ¶ 9). Benton refused to provide any original documentation because defendant Terry Eichman, who apparently was also an employee

1

of AWPC, had previously allowed him to use the full flight simulator without any proof of citizenship. (*Id.*). Plaintiff notified defendant Susan McNeice of Eichman's alleged violation of federal regulations and company policy, and McNeice responded that "I would watch how you raise concerns about this, even to me." (*Id.* ¶ 10). On February 15, 2019, Plaintiff reported the same alleged violation to Chief Pilot Christian Durante and Janice Gerold, who worked in AWPC's Human Resources Department. (*Id.* ¶ 11). Because Defendants allegedly took no action and refused to investigate the matter, on August 12, 2019, Plaintiff filed a complaint with EthicsPoint detailing the violations. (*Id.* ¶¶ 12 & 15). On August 23, 2019, AWPC informed Plaintiff that she would be terminated, and Plaintiff was officially terminated on September 30, 2019. (*Id.* ¶¶ 6 & 16).

Plaintiff initially filed a complaint in the Superior Court of New Jersey, alleging that Defendants terminated Plaintiff for "disclosing and/or objecting to Defendants' fraudulent and illegal activities" and, by doing so, violated New Jersey's Conscientious Employee Protection Act ("CEPA"). (*Id.* at 1 & ¶¶ 22–23). On March 6, 2020, Defendants removed this action to this Court, invoking diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (D.E. No. 1, Notice of Removal ¶ 6). On May 7, 2021, Defendants filed the instant Motion to Compel, arguing that, as a condition of Plaintiff's employment with AWPC, Plaintiff agreed to a dispute resolution agreement ("Dispute Resolution Agreement" or "Agreement") contained in the offer letter she signed ("Offer Letter") with AWPC. (*See generally* D.E. No. 20-1 ("Def. Mov. Br.")). Plaintiff opposes the Motion to Compel (D.E. No. 21 ("Pl. Opp. Br.")), and Defendants replied (D.E. No. 22 ("Def. Reply Br.")).

On July 26, 2021, the Court informed the parties of its intention to convert this Motion to Compel to a motion for summary judgment. (D.E. No. 23 ("Letter Order") at 2). Pursuant to

Federal Rules of Civil Procedure 12(d), the Court also ordered the parties to submit any additional materials that are pertinent to the Motion to Compel. (*Id.*). Plaintiff filed a certification. (D.E. No. 25 ("Irwin Decl.")). Despite an extension of time, Defendants did not file any supplemental documents. (*See* D.E. No. 26).

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The mere existence of an alleged disputed fact is not enough. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Rather, the opposing party must prove that there is a genuine dispute of a material fact. *Id.* at 247–48. An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is "material" if under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.* On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable

inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## III.   DISCUSSION

The Federal Arbitration Act (the "FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). A court must order the parties to proceed to arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). And "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

As the Court previously informed the parties, the Court will consider the Motion to Compel under the Rule 56 standard because "matters beyond the pleadings are considered." (Letter Order at 2 (quoting *Ohio v. Patterson*, 953 F.2d 44, 45 (3d Cir. 1991)). More specifically, the Court must decide whether "Attachment A" of the Offer Letter, which Plaintiff signed as a condition of her employment and addresses dispute resolution, binds Plaintiff to arbitrate the CEPA claim she

4

raises against Defendants. In parts relevant to this Motion to Compel, the Dispute Resolution Agreement states that:

> Any dispute, controversy or claim between the parties arising out of or relating to this offer letter, all related agreements referenced herein, your employment with the Company or your separation from employment with the Company ("covered dispute"), is to be resolved through the Company's Assurance of Fair Treatment (AFT) process. Any covered dispute not amicably resolved through the AFT Process may then be submitted to arbitration as described below.
>
> Any unresolved dispute will be settled by arbitration conducted in Philadelphia, Pennsylvania before a single arbitrator who shall be a former federal or state court judge, in accordance with the Employment Rules of the American Arbitration Association then in force.

(D.E. No. 20-2, Ex. A).

Defendants argue that, under New Jersey law, the Dispute Resolution Agreement is a valid and enforceable arbitration agreement and Plaintiff's CEPA claim falls within its scope. (Def. Mov. Br. at 6–11). Plaintiff does not dispute that New Jersey law governs the formation and interpretation of the Dispute Resolution Agreement. (Pl. Opp. Br. at 4–5). She argues, however, that New Jersey law requires that a waiver of one's right to sue "must be clear and unambiguous—that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a juridical forum." (*Id.* at 6 (quoting *Atalese v. U.S. Legal Servs. Grp. L.P.*, 99 A.3d 306, 315 (N.J. 2014))). Plaintiff argues that the Dispute Resolution Agreement is invalid because it "does not explain what arbitration is, nor does it indicate how arbitration is different from a proceeding in a court of law." (*Id.* at 10–11). In addition, Plaintiff argues that the Agreement is not enforceable for another reason: it fails to specify that Plaintiff waived her right to pursue her statutory claims in a court of law. (*Id.* at 11–15).

5

The Court agrees with Plaintiff. The Third Circuit has held that "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *James v. Global TelLink Corp*, 852 F.3d 262, 268 (3d Cir. 2017) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). To determine whether the parties agreed to arbitrate, the Court turns to "ordinary state-law principles that govern the formation of contracts." *First Options of Chic. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In New Jersey, the law is clear that "a clause depriving a citizen of access to the courts should clearly state its purpose." *Atalese*, 99 A.3d at 314 (quoting *Marchak v. Claridge Commons, Inc.*, 633 A.2d 531, 535 (N.J. 1993)); *see Moon v. Breathless Inc*, 868 F.3d 209, 214 (3d Cir. 2017) (stating that, under New Jersey Law, a valid arbitration clause "must explain the difference between arbitration and litigation"). Underlying this rule is the "customary principle[] of contract law" that "[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent." *Id.* at 312–13 (internal quotation marks omitted). Because "[m]utual assent to an agreement requires mutual understanding of its terms," and because "an average member of the public may not know—without some explanatory comment—that arbitration is a substitute for the right to have one's claim adjudicated in a court of law," New Jersey requires that a valid arbitration clause must include "a clear and unambiguous waiver of rights" such that "the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." *Id.* at 313–15.

The Agreement at issue does not meet the "clear and unambiguous waiver of rights" standard. Nowhere in the Agreement does it explain that arbitration is a waiver of the right to bring suit in a judicial forum. Defendants do not dispute this conclusion. Instead, they argue that Plaintiff proposes an "inappropriately restrictive view" of arbitration agreements, which "has been

6

rejected by New Jersey [c]ourts." (Def. Reply Br. at 3). As support, Defendants rely on *Hojnowski ex rel. Hojnowski v. Vans Skate Park*, 868 A.2d 1087 (N.J. Super. App. Div. 2005). (*Id.*). Defendants argue that, in *Hojnowski*

> The Appellate Court has recognized that "while certain 'commentators have found fault with the arbitration process, focusing on concerns such as . . . the elimination of the right to a jury trial," such "complaints have not gained a foothold in New Jersey's jurisprudence," where "[a] 'State interest in favoring arbitration' has instead been recognized.'"

(*Id.* (quoting *Hojnowski*, 868 A.2d at 1092–93)).

However, *Hojnowski* predates *Atalese* and was decided by the Appellate Division. Moreover, the above quotations from *Hojnowski* simply recognize that New Jersey law does not disfavor arbitration, and that "[t]he substitution of one forum for another, in and of itself, has never been declared against the public policy of this State." 868 A.2d at 1092. *Hoinowski* did not address the formation of an arbitration agreement but rather involved an arbitration clause that sufficiently explained that the agreement "eliminated the right to sue in a court of law." *Id.* at 1091. Accordingly, *Hojnowski* in no way negates the requirement that arbitrations agreements contain a "clear and unambiguous waiver of rights."

Defendants also rely on the Honorable William Martini, United States District Judge's decision in *Gomez v. PDS Tech.*, Inc, No. 17-12351, 2018 WL 1871461 (D.N.J. Apr. 19, 2018), which involved an arbitration clause that did not explain that arbitration meant a waiver of the parties' rights to sue. (Def. Reply Br. at 3–4). Defendants argue that, because *Gomez* did not preclude arbitration even when the arbitration agreement there made no reference to the jury trial waiver, the Agreement in the instant action should be similarly upheld. (*Id.*). However, whether the parties had a meeting of the minds with respect to their rights to a judicial forum was not disputed in *Gomez*. The issue before Judge Martini was whether the arbitration clause sufficiently

7

put the plaintiff on notice that, by signing the agreement, he waived his statutory claims, including his CEPA claims. *See Gomez*, 2018 WL 1871461, at *1. Defendants do not appear to argue, nor could they, that the Judge Martini had an independent obligation to raise issues regarding the validity or enforceability of the arbitration agreement. Thus, *Gomez* does not support Defendants' argument because it was silent on whether the agreement in that case contained a "clear and unambiguous" waiver of the right to sue.

Finally, in a footnote, Defendants argue that Plaintiff is "obligated to proceed to binding arbitration" because she "had not argued that she failed to read, understand, or execute" the Agreement. (Def. Reply Br. at 4). It is unclear how Plaintiff's subjective understanding of the contract terms is relevant to the validity of the Agreement. *See Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1104 (N.J. 2003) (stating that New Jersey courts "determine a written agreement's validity by considering the intentions of the parties as reflected in the four corners of the written instrument"). Notwithstanding, Plaintiff seemingly addresses this argument in her declaration, which was filed after the Court's Letter Order. Plaintiff declares that she "did not understand that the Agreement is meant to prevent [her] from filing a lawsuit against AWPC in court," and that she "did not know the Agreement was meant to waive or deprive [her] of [her] right to a jury trial in court under the [CEPA] or any other statutory rights." (Irwin Decl. ¶¶ 8 & 10). Defendants did not respond to Plaintiff's declaration or supplement any materials relevant to their Motion to Compel despite having had the opportunity to do so. Thus, Plaintiff's declaration is deemed undisputed for purposes of Rule 56 and overcomes Defendants' argument concerning her subjective understanding.[1]

---

[1] Because the Court finds that the Dispute Resolution Agreement is invalid, the Court does not address Plaintiff's alternative argument concerning the Agreement's failure to notify the parties of their waiver of statutory claims.

8

As outlined above, New Jersey law requires an arbitration clause to include "a clear and unambiguous" waiver of the parties' rights to sue, and Defendants do not dispute the instant Agreement fails to do so. Nor do they present persuasive legal or factual support for their Motion to Compel. Accordingly, the Court declines to compel Plaintiff to arbitration or to stay the instant action.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel is DENIED. An appropriate Order accompanies this Opinion.

Date:   November 24, 2021              *s/Esther Salas*
                                       Esther Salas, U.S.D.J.